**Henry E. HINKLE, et al.,
Plaintiff/Appellant,**

**v.**

**Lee EMMONS and Ruby Emmons,
Defendants/Respondents.**

**Henry E. HINKLE, et al.,
Plaintiff/Respondent,**

**v.**

**Lee EMMONS and Ruby Emmons,
Defendants/Appellants.**

**Nos. 59589, 59609.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 17, 1992.

Robert L. Brown, Arnold, for plaintiff/appellant.

Dennis H. Tesreau, Wegmann, Gasaway, Stewart, Schneider, Dieffenbach, Tesreau & Stoll, P.C., Hillsboro, for defendants/respondents.

SMITH, Presiding Judge.

Both parties appeal from a judgment following a bench trial in a suit brought by plaintiff to quiet title. We have consolidated the appeals.

The dispute involves a plat of land known as Elm Park subdivision which consists of Lot 1, Lot 2, and Park Drive. Lot 1 is owned by defendants and contains a commercial establishment consisting of a convenience store and a restaurant. It fronts on the south on Elm Drive, and its entire eastern boundary is Park Drive. Its northern boundary is Lot 2 owned by the plaintiff. The only access to Lot 2 is over Park Drive. Defendants made certain improvements to Lot 1 and to Park Drive which included resurfacing a portion of the road and some excavation of the road to change the slope between the traveled portion of Park Drive and Lot 1.

Plaintiff brought this action to quiet title to Park Drive in him and also to quiet title in him to a small triangular parcel next to Lot 2 by adverse possession. He also sought damages for trespass for the defendants' conduct in making improvements to Park Drive which plaintiff contends he owns by virtue of two deeds, one a quitclaim and a subsequent warranty deed. Defendants filed a counterclaim seeking to quiet title to themselves of the triangular parcel of property. At trial the main issue became the ownership of Park Drive. The

trial court quieted title to the triangular parcel in plaintiff based upon adverse possession. No question of the correctness of that decision is raised on appeal. The trial court found that Park Drive was a public road by common law dedication and did not belong to either party. It then awarded damages to plaintiff in the amount of $4125. Plaintiff appealed from the determination of the status of Park Drive. Defendants appealed from the award of damages.

Our standard of review in a court tried case has been frequently stated. The decree will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Patterson v. Null,* 751 S.W.2d 381 (Mo.App.1988) l.c. 383. We give deference to the trial court in its determination of the credibility of the witnesses. Most of the evidence in this case was documentary and is not subject to the deference rule.

A public road may be established in three ways: (1) under § 228.190 RSMo 1986; (2) by prescriptive use; or (3) by an implied or common law dedication. *Id.* at [1]. In the absence of a formal dedication a common law dedication may exist if "there is evidence that the owner clearly showed his intent to dedicate the land for public use and the land was accepted by the public and was so used by the public." *Id.* at [7–9]. Governmental acceptance is not necessary so long as public acceptance is present. *Moon Equipment Co., Inc. v. Hess,* 761 S.W.2d 742 (Mo.App.1988) [1, 2]. The evidence here is sufficient to establish a common law dedication.

In the plat filed to establish the subdivision, Park Drive is labeled separately from Lots 1 and 2 and the name given to the area—Park Drive—connotes public use as a street. Both Lots 1 and 2 utilize the Drive for access. No one pays taxes on the area containing the Drive. The county assessor's office shows plaintiff as owning only Lot 2 which does not include any part of Park Drive. The parcel map of the assessor's office shows Park Drive as a platted street. The failure of the plat to contain a specific dedication of the area as a public road does not prevent its dedication for that purpose. Words or markings commonly used to reserve land for public use will be interpreted as setting apart the area for the public. The evidence establishes that the original plat recognized three parcels in the subdivision—Lots 1 and 2 and a public road to service the lots.

It is clear that the public has extensively utilized the southernmost portion of the road for ingress and egress to Lot 1. This constitutes public acceptance of the dedication. Once there is a common law dedication of a road to public use, and the public accepts the same by use, the rights of the public are not restricted to the particular portion of the road traveled. *Patterson v. Null, supra,* [7–9]. It is the intent to dedicate the entire roadway and its use in whole or in part that creates the status of a public road under a common law dedication. In the case before us Lot 1 borders the entire length of Park Drive and it is logical that it was intended to provide access at any point on that lot or if that lot were further subdivided, to more than one lot. Plaintiff's deeds to Park Drive both post-date the dedication of Park Drive and its public user. The grantors of those deeds could not convey to plaintiff property they did not own. The trial court correctly found that Park Drive was a public road.

Having made that determination the court then awarded damages for trespass. We are unable to find support for that finding in the record. Trespass is a "direct physical interference with the person or property of another." *Hansen v. Gary Naugle Construction Company,* 801 S.W.2d 71 (Mo. banc 1990) [3]. Park Drive was correctly found to be a public road belonging to neither party. In the absence of ownership in plaintiff no trespass could occur. The plaintiff's testimony was clear that defendants' activities occurred only on Park Drive. Damages for trespass were improperly awarded.

In its conclusions of law the court stated:

"Although the Court holds that the platting of said street constitutes a common

**362**

law dedication, the changes made by Defendants were in the contour of a small portion of Park Drive which was a grass-covered hillside, and in the placement of gravel on a small portion of Park Drive so that defendants would have access to the rear of their property over Lot 2. The Court finds that said actions by Defendants did constitute damage to Plaintiff in the amount of Four Thousand One Hundred Twenty–Five and no/100 Dollars ($4125.00)."

 Apparently the trial court was trying to award damages for something in the nature of a nuisance created by defendants in changing the contour of Park Drive resulting in a diminution of value of the plaintiff's property. Damages for a permanent nuisance are measured by the difference in the land's market value immediately before and immediately after the injury. Damages for temporary nuisance include the decrease in rental or useable value during the injury. *Frank v. Environmental Sanitation Management*, 687 S.W.2d 876 (Mo. banc 1985) [10–13]. No evidence was provided of either of these measures. Generally, the measure of damages to real property is the decrease in value or the cost of restoration whichever is less. *Farmer's Mutual Fire Insurance Co. v. Farmer*, 795 S.W.2d 104 (Mo.App. 1990) [5, 6]. The only evidence was plaintiff's testimony of the decrease in value of Park Drive which he did not own. He gave no testimony of any decrease in value of his property from the changes defendants made in Park Drive, nor of any decrease in rental or useable value during the time of the excavating and resurfacing, nor on cost of restoration. Whatever the theory upon which the trial court made the damage award the record does not support the award.

The award of damages is reversed. In all other respects the judgment is affirmed.

KAROHL and AHRENS, JJ., concur.