L. N. SPALDING, Respondent, v. CITIZENS' BANK et al.,
Appellants.

St. Louis Court of Appeals, January 24, 1899.

Practice, Trial: FINAL JUDGMENT. Under our practice act but one
final judgment can be given in an action; in the case at bar, the
judgment, as appears upon the face of the record, fails to dispose of
all the parties to the record, is an incomplete disposition of the
issues and in violation of section 2213, Revised Statutes 1889. Held,
that the trial court should have rendered judgment either for or
against defendants Pollard and Motley.

*Appeal from the Pike Circuit Court.*—HON. REUBEN F.
ROY, Judge.

REVERSED AND REMANDED.

J. D. HOSTETTER and E. W. MAJOR for respondent.

All the evidence was oral, save Mr. Austin's deposition,
and Mr. Pollard's deposition, which was read by plaintiff as

an admission, but he subsequently testified orally in court, and in such cases the rule is that the findings of the chancellor are deferred to by appellate courts, and his finding on this point was against appellants' contention. Kincaid v. Irvine, 140 Mo. 615; Hartley v. Hartley, 143 Mo. 217 loc. cit. A party may, after making his offer to rescind, "do any acts in regard to the stock reasonably necessary to protect his interests, and yet not lose his right to rescind." Cook on Corp., sec. 356. So the action may be maintained, even though the corporation has become insolvent and gone into the hands of a receiver. Cook on Corp., sec. 356, p. 708, and authorities there cited. Ramsey v. Thompson Mfg. Co., 116 Mo. 313; Clark on Corp. 284. A purchaser of bank stock is necessarily compelled to rely on statements of officers and directors, as to its conditions, because in the very nature of the transaction they are the only ones who really do, or can know, its true condition, and the law makes it their duty to know. Hence the purchaser has the right to rely absolutely on their statements, and they are certainly liable for material misrepresentations. Bank v. Hunt, 76 Mo. 439; Ramsey v. Mfg. Co., 116 Mo. 313; Bank v. Byers, 139 Mo. 627; Beebe v. Hatfield, 67 Mo. App. 609; Leonard v. Latimer, 67 Mo. App. 138; Clark v. Edgar, 84 Mo. 106. Appellant's complaint about defendants being deprived of a jury trial is not well founded. This was an equity case pure and simple, and the court had a right to submit issues to the jury, but its verdict thereon was purely advisory. Sutton v. Dameron, 100 Mo. 141; Swon v. Stevens, 143 Mo. 384; Kostuba v. Miller, 137 Mo. 161 at 172. And the directors, guilty of the fraud, may be properly made codefendants with the corporation, and are individually liable. Cook on Corp., secs. 155 and 356; Clark on Corp., pp. 401 and 530; Tyler v. Savage, 143 U. S. 79; Hill v. Lane, L. R. 11 Eq. 215; Slattery v. Transportation Co., 91 Mo. 217. Besides, even if it be considered error, it can be cured by a

dismissal as to said parties.   And such dismissal may be made in the appellate court as well as in the court below, and we authorize this court to dismiss said cause, as to said Motley and Pollard, and strike their names from the record, as it has a right to do.   State ex rel. v. Tate, 109 Mo. 265; Bensieck v. Cook, 110 Mo. 183; Crispen v. Hannovan, 86 Mo. 160; Cruchon v. Brown, 57 Mo. 38; R. S. 1889, sec. 2101.

I. C. DEMPSEY and TAPLEY & FITZGERRELL for appellant.

Respondent did not undertake to exercise his alleged right to rescind his contract under which he purchased the shares of stock in time for reason that he did not promptly disaffirm upon the discovery of alleged fraud, treated the stock as his own, the contract as subsisting and binding, and exercised his right of election by affirming what was at most but a voidable transaction and that election is final. Taylor v. Short, 107 Mo. 384, 392; Milton v. Smith, 65 Mo. 315, 321 and 322; Cahn v. Ried and Bungardt, 18 Mo. App. 115; Robinson v. Siple, 129 Mo. 208, 222; Estes v. Reynolds, 75 Mo. 563; Hart v. Handlin, 43 Mo. 171, 175. If the proceedings had constituted a jury trial, then there was no verdict upon which judgment could be rendered, since the proceedings as against said Tapley, Purnell, Motley, McPike and Pollard is an action for damages if anything.   R. S., secs. 2161, 2164 and 2166; Burghart v. Brown, 60 Mo. 24; Cox v. Bright, 65 Mo. App. 417. * * * The judgment is erroneous in this.   The cause was not dismissed as to the defendants Pollard and Motley, and the judgment ignores them and this error is manifest upon the record R. S. 1889, sec. 2213; Miller v. Dryden, 34 Mo. App. 602, 608; Holborn v. Naughton, 60 Mo. App. 100; Eichelmann v. Weiss. 7 Mo. App. 87; McCord's Adm'r v. McCord, 77 Mo.

166, 175. The appeal in this case was taken on day bill of exception was filed, to wit: March 14, 1898, and hence appellant's motion praying the court to dispose of cause as to all defendants was in time. Land Inv. Co. v. Martin, 125 Mo. 114; Cunningham v. Roush, 141 Mo. 640.

BLAND, P. J.—This is a suit in equity by plaintiff asking for the rescission of a contract of purchase of ten shares of the capital stock of defendant bank; to recover $900 paid on the purchase of the stock, and for the surrender and cancellation of a $200 note given the bank by plaintiff for the balance on the contract price of the stock; on the ground that the defendants, other than Dempsey, as directors and cashier of the bank, falsely and fraudulently represented to plaintiff that the bank was in good condition; was solvent; had a surplus and was paying annual dividends; and averred that plaintiff relied on these representations as true and purchased the stock.

The answer was a general denial and a plea of estoppel by conduct.

The evidence makes it quite clear that as far back as August, 1895, when the bank was examined by a State bank examiner, it was insolvent and not a dividend paying institution, its president, cashier and assistant cashier being indebted to it by notes and overdrafts for more than double the amount of its capital stock ($25,000); a considerable portion of which indebtedness proved a loss to the bank, on account of the insolvency of the president and cashier. The ten shares of stock purchased by the plaintiff had been received by the bank as collateral security for a portion of the indebtedness of Phillips, the indebted cashier, and the bank had become the owner of the shares on account of Phillips' inability to redeem them. Phillips died about ———, 1896, and R. L. Pollard was appointed cashier. Defendants Joseph H. Tapley, Joseph B. Purnell, Marion E. Motley and William B.

McPike, in April, 1896, and prior and subsequent thereto, were stockholders and directors of the bank. On the thirty-first day of March, 1897, the secretary of state took charge of the bank on the ground of insolvency and impairment of its capital stock and for various violations of the law governing banking corporations, and defendant Isham C. Dempsey was subsequently appointed receiver by the Pike county circuit court and as such had charge of the assets of the bank when this suit was brought. Some time in March, 1896, the plaintiff having learned that the bank had ten shares of its capital stock for sale, went to Pollard, its cashier, and made inquiry about the bank and the stock, and wanted to know for what sum the stock could be purchased. Pollard told him the bank was doing nicely, was making money, and was in good condition; that the stock was for sale; but that he would have to see the discount committee (composed of the directors), about buying the stock. In April, 1896, plaintiff appeared at a directors' meeting, when all the directors, except Motley, were present, and purchased the ten shares of stock of the par value of $1,000 for $1,100. What took place at this meeting is in dispute. The plaintiff testified substantially that he made the purchase of the board of directors present at the April meeting; that they represented the bank to be in a good solvent condition and had a surplus represented by dollars, and that the bank had paid regular annual dividends and was on a dividend paying basis; that he relied on these representations believing them to be true; that he had no other means of gaining information of the condition of the bank, and that he agreed to take the stock at $1,100, the bank to have the year's dividend on the stock; that he had paid $900 in cash on his purchase, and that the bank held his note for the balance of $200 and the shares of stock as security for payment thereof. In the main he is corroborated by J. B. Purnell; the other directors, however,

deny making the sale or making any representations to plaintiff as to the condition of the bank; they claim the sale was made by Pollard, the cashier, and not by them.  Pollard denies that he made the sale, says he referred the plaintiff to the directors to make the purchase, and that they sold the stock to plaintiff; but admits that he did conceal the true condition of the bank from plaintiff, when plaintiff made the inquiry of him; that he thought it was his duty to the bank to do so.  He also testified that he told plaintiff that the bank was doing nicely.  The plaintiff's stock was voted by him at the annual election, March, 1897, held by the stockholders to elect officers of the bank.  After close of the bank he attended the meetings of the directors for the purpose of devising ways and means to reopen the bank.  Some of the witnesses testify that when a proposition was made that each stockholder pay into the bank fifty per cent of his stock for the purpose of reopening, that plaintiff favored the measure and offered to pay his part at once; this he emphatically denies, and says that at that meeting he insisted on a settlement of his claim against the bank.  The plaintiff also signed a petition to the circuit judge asking for the appointment of Dempsey as receiver of the bank after the secretary of state had taken charge of it; but at this time plaintiff was a depositor of the bank.  The evidence was heard by the court and a jury, at the close of which the court submitted to the jury the following issues of fact, viz.:

"1st.  Did the officers and agents of the bank in negotiating the sale to plaintiff, represent to plaintiff that the bank was in a solvent condition?

"2nd.  Did said officers and agents then and there represent said bank as doing a good paying business?

"3rd.  Did said officers and agents then and there represent to plaintiff that said bank was paying regular annual dividends?

4th.   Did said officers and agents then and there represent to plaintiff that there was a surplus on hand?

"If the jury find any of the above issues in the affirmative then the jury will answer these two questions:

"5th.   Did said officers and agents then and there know said representations to be false?

"6th.   Did plaintiff in making said purchase rely on said statements and representations?"   To which the jury responded by their verdict as follows:

"We the jury find the issues of fact as follows:

"1st.   We find the first issue in the affirmative.

"2nd.   We find the second issue in the affirmative negative.

"3rd.   We the jury find the third issue in the affirmative.

"4th.   We the jury find the fourth issue in the affirmative negative.

"5th.   We the jury find the fifth issue in the affirmative.

"6th.   We the jury find the sixth issue in the affirmative negative."

The verdict was rendered on November 24, 1897; on the twenty-seventh day of same month defendants filed their motion for a new trial and in arrest of judgment.   On the sixth day of December, 1897, the court rendered judgment for plaintiff against all of the defendants, except Pollard and Motley, for or against whom no finding was made or judgment rendered.   On the second day of the term thereafter defendants renewed or filed their second motions for new trial and in arrest of judgment; none of said motions called the attention of the court to its failure to render judgment for or against Pollard and Motley; these motions were on the eighth day of December, 1897, by the court overruled; on the seventh of January following and during the same term of court the defendant filed the following motion:

Spalding v. Bank.

"State of Missouri,  ⎱
"County of Pike.   ⎰ ss.

"In the circuit court of said county.
"L. N. Spaulding, Plaintiff,

v.

"Citizens' Bank et al., Defendants.

"I. C. Dempsey, Receiver of said Bank.

"Now at this day come the defendants and move the court to render some judgment or dispose of this cause in some way in so far as the same relates to the defendants, Marion E. Motley and Robert L. Pollard, not confessing that judgment should be rendered against said defendants so named."

This motion was on the same day by the court overruled; the appeal was taken and allowed on December 8, 1897, so that the motion for judgment for or against Pollard and Motley came too late, as the court after granting the appeal, had no further jurisdiction of the cause, and could make no orders therein except such as were necessary to perfect the appeal. Burgess v. O'Donoghue, 90 Mo. 299. But the error, if it is error, is apparent on the face of the record. Under our practice act but one final judgment can be given in an action (R. S. 1889, sec. 2213), and the court should have rendered a judgment either for or against Pollard and Motley. McCord's Adm'r v. McCord, 77 Mo. 166. In Miller v. Bryden, 34 Mo. App. 602, it was held, that in a suit against two defendants jointly, a judgment against one only, ignoring the other, can not be upheld against the objection of the defendant in judgment, citing Schweickardt v. City of St. Louis, 2 Mo. App. 571, and Eichelmann v. Weiss, 7 Mo. App. 87, the court in this case saying that the "principle is analogous to the well known rule that where there are several issues in a civil case a verdict which does not dispose of all the issues is bad on motion in arrest." The action was

for the recovery of a Winchester rifle. In Ferguson v. Thatcher, 79 Mo. 511, it was held that in a suit on a dishonored check, against several defendants, the verdict and judgment should embrace and dispose of the case as to all. In Berkson v. Kansas City Cable Railway Co., 144 Mo. 211, the Kansas City and Independence Railway Company and James Lillis begun to recover damages resulting from a change of grade of Independence avenue just east of the eastern limits of Kansas City; the jury returned a verdict against the Kansas City Railway Company for $3,500, but made no finding as to the other two defendants. On this verdict the court entered a judgment for plaintiff against the Kansas City Cable Railway Company for the damages assessed by the jury and in favor of the other defendants. On appeal the court says that only such errors as are fatal to the merits appearing on the face of the record will be considered, in the absence of a motion in arrest or for new trial, calling the attention of the trial court to the error, citing State ex rel. v. Scott, 114 Mo. 31, and citing also section 2303, which prohibits the reversal of a judgment by an appellate court, except for error materially affecting the merits. The court then proceeded to argue that from the fact that the action was for a tort and there could be no contribution among the defendants of the damages recovered, the defendant against which the judgment was rendered had no legal grounds to complain because judgment was not also rendered against its joint tort feasors, and distinguishes the case from the case of Ferguson v. Thatcher, *supra,* where there was or might be a right to contribution or to indemnity, and refused to reverse the judgment for the reason that the failure of the jury to find against or for the other two defendants was not prejudicial to the Kansas City Cable Railway Company because the defendants were joint *tort feasors* and with no right of contribution existing among them. The court evidently overlooked section 4431, Revised Statutes of 1889,

which reads as follows: "Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract." In Brewster v. Gauss, 37 Mo. loc. cit. 519, the supreme court, speaking of this statute, say the statute is general in its nature and applies to all judgments for private wrongs; and in Schweickhardt v. City of St. Louis, 2 Mo. App. 571, which was an action for injuries to plaintiff caused by his falling into a deep and dangerous excavation which had been made and left unguarded by the defendants, the court held the defendants jointly liable and subject to contribution. Eichelman v. Weiss, 7 Mo. App. loc. cit. 89. The reasoning in Berkson v. Kansas City Cable Company, *supra,* is inapplicable to the facts in the case at bar, as the right of contribution does exist among the defendants. The judgment, as appears upon the face of the record, fails to dispose of all the parties to the suit, as an incomplete disposition of the issues and in violation of section 2213, *supra,* and for these reasons is reversed and remanded. All concur.