**OZARK AIR LINES, INC., Respondent,**

v.

**VALLEY OIL COMPANY, L.L.C., Appellant.**

**No. WD 66644.**

Missouri Court of Appeals,
Western District.

Nov. 27, 2007.

---

1. All rule references are to Mo. Rules Crim. P.2004, unless otherwise indicated.

G. Keith Phoenix, St. Louis, John W. Cowden, Co-Counsel, Kansas City, MO, for appellant.

Edward D. Robertson, Jr., Jefferson City, MO, for respondent.

Before THOMAS H. NEWTON, Presiding Judge, PATRICIA BRECKENRIDGE,[1] Judge and JOSEPH M. ELLIS, Judge.

PER CURIAM.

Valley Oil Company, L.L.C., appeals a judgment following a jury verdict in favor of Ozark Air Lines, Inc. on Ozark's claims for strict liability, negligence, and breach of contract. Specifically, Valley Oil asserts that the trial court erred in failing to reduce the jury verdict by the amount that Ozark collected from other defendants in pretrial settlements. For the following reasons, we affirm the trial court's judgment.

From February 2000 to March 2001, Ozark operated as a regional airline based in Columbia, Missouri. As part of its operations, Ozark owned, operated, and maintained a fuel storage facility, also in Columbia. Beginning on August 8, 2000, Ozark's airplanes suddenly failed to start. The failures were subsequently determined to be the result of contaminants in the fuel. As a result of the "no-starts," Ozark was forced to cancel flights, tear down fuel systems in its aircraft, and remove and replace fuel controls in its aircraft.

On November 21, 2003, Ozark filed its fourth amended petition against Valley Oil and eleven other defendants, alleging that the no-start incidents were caused by engine defects, defects in the fuel farm, and defects in the fuel provided to Ozark. The petition included seventeen separate counts, asserting claims for breach of contract, negligence, strict liability, breach of warranty, misrepresentation, and fraud.

Ozark sought damages from all defendants in excess of $6,000,000 for actual expenses and lost revenue, projected future lost business value and lost profits, and loan payments.

Valley Oil was named as a defendant in five of the counts in the petition. Four of those counts included additional defendants, but Valley Oil was the sole named defendant in Count 2, which was a claim for breach of contract for failure to provide a properly operating turn-key fuel farm. In its answer, Valley Oil pled that any judgment entered against it must be reduced by the amount of all settlement agreements entered into between Respondent and any of the other defendants pursuant to § 537.060.[2]

Prior to trial, Respondent entered into settlement agreements with all of the defendants except Valley Oil for an aggregate amount of $2,815,000. The case proceeded to trial against Valley Oil alone. No evidence was presented concerning the pretrial settlements. Seven counts were ultimately submitted to the jury in separate verdict directors, and the jury was instructed to assess one amount of damages if it found in favor of Ozark on any of the seven claims.

The jury found in favor of Valley Oil on four counts: breach of contract for failure to provide uncontaminated aviation fuel, breach of contract for failure to troubleshoot and re-certify the fuel farm, product defect of the aviation fuel, and negligent misrepresentation. The jury returned verdicts in favor of Ozark on the remaining three counts: breach of contract for failure to provide a properly operating turn-key

---

1. Breckenridge, J., was a member of this Court at the time this case was argued and submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this Court as a special judge for the purpose of disposition of this case.

2. All statutory citations are to RSMo 2000 unless otherwise noted.

fuel farm (Count 2), negligence (Count 6), and product defect of the fuel farm (Count 7). Accordingly, the jury assessed damages in a lump sum amount of $3,000,000, with no indication as to what amount was to be allocated to each cause of action.

After the jury returned its verdict and the jury was discharged, Valley Oil asked the court to reduce the jury's award by the aggregate amount of the settlement agreements entered into between Ozark and the other defendants. Ozark stated that it was not prepared to argue the issue at that point, and Valley Oil subsequently filed a motion to reduce the verdict by the aggregate amount of the settlements based on § 537.060, which the trial court denied. Thereafter, Valley Oil filed a motion to amend the judgment, which the court also denied. This appeal follows.

In its sole point on appeal, Valley Oil asserts that the trial court erred in failing to reduce the $3,000,000 judgment by $2,815,000, the amount Ozark collected from the other defendants in pretrial settlements. In denying Valley Oil's motion to reduce the verdict, the trial court ruled that, as a matter of law, § 537.060 "deals exclusively with tort claims" and "is not applicable to a mixture of tort and contract claims as in the present case." Thus, the sole issue is whether the trial court erroneously declared the law. *Norman v. Wright*, 100 S.W.3d 783, 785 (Mo. banc 2003) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

Valley Oil makes two separate arguments under this Point. It first contends that it was entitled to a reduction of the jury award by the pretrial settlement amounts under § 537.060. Alternatively,

Valley Oil argues that, even if § 537.060 does not apply, "Missouri policy and common law clearly abhor double recovery for the same injury and prohibit awarding [Ozark] a windfall in this case." [3]

■ Valley Oil claims that the trial court erred in refusing to reduce the damages award by the amount of pretrial settlements because it erroneously interpreted § 537.060 as inapplicable to situations where tort and contract damages are merged. Valley Oil argues that "under the plain language of the statute, set-off is proper where a 'judgment is given in good faith to one of two or more persons liable in tort for the same injury.'" Valley Oil contends that § 537.060 applies because the settling defendants and Valley Oil were joint tortfeasors liable for the same injury, regardless of the fact that the jury also found in favor of Ozark on its claim for breach of contract. Valley Oil further contends that § 537.060 mandates reduction of the judgment because Ozark sought the same total damages from the other defendants in its petition as it did from Valley Oil at trial. Valley Oil claims that Missouri does not apply § 537.060 "narrowly, particularly when doing so would entitle plaintiff to a windfall" and, furthermore, that § 537.060 does not require that a "claim arise 'only' or 'exclusively' in tort."

Section 537.060 provides, in relevant part:

When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons *liable in tort for the same injury or wrongful death*, such agreement shall not discharge any of the

---

**3.** Valley Oil also contends in the argument portion of its brief that "[t]he jury correctly returned one verdict for merged tort and contract damages because [Ozark] sought judgment for identical damages under both tort and contract theories." However, this section of Valley Oil's argument fails to articulate any alleged error committed by the trial court and, therefore, need not be discussed.

other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater.

(Emphasis added.)

In *Carter v. St. John's Regional Medical Center*, 88 S.W.3d 1 (Mo.App. S.D.2002), a physician brought claims for breach of contract and tortious interference with business expectancy against a hospital. *Id.* at 5. The jury awarded damages of $1.0 million on the contract claim and $1.5 million on the tort claim. *Id.* at 7. On appeal, the hospital argued that the trial court erred in refusing to reduce the plaintiff's judgment by the amount received by the plaintiff before trial in a settlement with other defendants. *Id.* at 23. The Southern District of this Court held that, because it had reversed the portion of the trial court's judgment that was for tort damages, leaving only the damages on the contract claim, § 537.060 was not implicated. *Id.* In so holding, the court stated that § 537.060 "deals exclusively with tort claims" and "mandates judgment reduction when other 'persons *liable in tort* for the same injury' have, in good faith, paid the injured party and been released." *Id.; see also Norman*, 100 S.W.3d at 785 ("Section 537.060 applies to all tort actions."); *Lockwood v. Schreimann*, 933 S.W.2d 856, 861 (Mo.App. W.D.1996) ("Section 537.060 ... addresses only actions in tort."). The court specifically held that § 537.060 did not entitle the defendant "to credit against that part of the judgment representing damages for breach of contract." *Carter*, 88 S.W.3d at 23.

Similarly, in *Hagedorn v. Adams*, 854 S.W.2d 470 (Mo.App. W.D.1993), the plaintiff brought a negligence claim against the City of Lee's Summit, a police officer, and a motorcycle driver for injuries sustained while he was a passenger on the motorcycle that was struck by a police car during a high-speed chase. *Id.* at 473. The jury awarded the plaintiff $20,000, and the trial court refused to reduce the judgment by the amount the plaintiff received from his uninsured motorist carrier. *Id.* at 478. On appeal, the city and the motorcycle driver argued that the trial court erred in failing to reduce the damages award because "the payment was on behalf of one liable in tort pursuant to section 537.060...." *Id.* This Court disagreed, stating that "[s]ection 537.060 involves the right of contribution between tortfeasors," but it "does not require that any settlement payments a plaintiff receives should, whether in contract or tort, be credited against his judgment." *Id.* at 479. Rather, this Court held that § 537.060 "is only applicable as between tortfeasors and does not address a liability under contract only." *Id.* In so holding, we noted that the "uninsured motorist coverage [had been] provided to the [plaintiff] under the [plaintiff's] contract of insurance." *Id.* We further stated that "[u]nder the collateral source rule, ... a wrongdoer is not entitled to have damages for which he is liable reduced by proving that [the] plaintiff has received or will receive compensation or indemnity for the loss from a collateral source." *Id.; see also Gaunt v. State Farm Mutual Auto. Ins. Co.*, 24 S.W.3d 130, 134 (Mo.App. W.D.2000) (collateral source rule "is an exception to the general rule that damages in tort should be compensatory only") (internal quotations omitted).

In the case at bar, the jury awarded one damages award for claims against Valley Oil for breach of contract, product defect, and negligence. Thus, under *Carter* and *Hagedorn*, § 537.060 is inapplicable and "does not entitle [Valley Oil] to credit against that part of the judgment repre-

senting damages for breach of contract." *Carter*, 88 S.W.3d at 23.

Valley Oil provides no authority to support its position that a joint tortfeasor is entitled to a reduction in a damages award when the award is for both a breach of contract claim and a tort claim. Nevertheless, Valley Oil argues that § 537.060 is applicable under the plain language of the statute, which provides that a joint tortfeasor is entitled to a reduction when "judgment is given in good faith to one of two or more persons liable in tort for the same injury." Valley Oil contends that § 537.060 is applicable because it was a joint tortfeasor with the other defendants that settled with Ozark prior to trial. To interpret the statute in the manner suggested by Valley Oil, however, would require this Court to read additional language into the statute, such as "liable in tort *or contract* for the same injury." This the court cannot do. *Martinez v. State*, 24 S.W.3d 10, 16 (Mo.App. E.D.2000).

█ Valley Oil was also not entitled to a reduction of the judgment by the pretrial settlement amounts because it failed to meet its burden to prove the affirmative defense. "A reduction under section 537.060 is a satisfaction of an amount owed," and "[s]atisfaction is an affirmative defense" which "must be pleaded and proved." *Norman*, 100 S.W.3d at 785. While Valley Oil did plead satisfaction under § 537.060 as an affirmative defense in its answer, it failed to prove the defense at trial. "The party asserting an affirmative defense bears the burden of proof." *Kansas City Power & Light Co. v. Bibb & Assocs., Inc.*, 197 S.W.3d 147, 156 (Mo. App. W.D.2006). As noted above, the settlements were never discussed at trial. Rather, Valley Oil waited until after the jury had rendered its verdict *and* the jury had been discharged before raising the issue of a reduction in the judgment based on § 537.060.

Moreover, Valley Oil failed to meet its burden, "[a]s the party asserting the affirmative defense, ... to posture the case to ensure that the trial court could apply its defense." *Bibb*, 197 S.W.3d at 157. In other words, Valley Oil "bore the burden of prosecuting the defense" and of "ensuring that the basis of the jury's verdict was known so that the [affirmative defense of satisfaction] could be applied to the appropriate claims." *Id.* As in *Bibb*, the general verdict in the case *sub judice* did not indicate how the jury apportioned the damages for Valley Oil's liability under each of the theories submitted. *Id.* at 151–52. Thus, "the trial court could not determine from the general verdict on which claims the jury's assessment of [damages] against [Valley Oil] was based," *id.* at 154, or, importantly, whether the damages were assessed based solely on the breach of contract claim against Valley Oil. As in *Bibb*, Valley Oil "did not request clarification of the verdict for purposes of applying its affirmative defense before the trial court received the verdict and the jury was discharged." *Id.* at 157. Thus, Valley Oil's "failure to take any action to determine the basis of its liability under the general verdict resulted in abandonment of its affirmative defense." *Id.*

Valley Oil attempts to distinguish *Bibb* and argues that § 537.060 applies to the case at bar even though the jury's damages award was undifferentiated, relying on this Court's decision in *Hogan v. Armstrong World Industries*, 840 S.W.2d 230 (Mo.App. W.D.1992). It asserts that *Hogan* shows that § 537.060 allows a reduction of the judgment amount "where the allocation of damages is unclear or unknowable."

In *Hogan*, Donald Hogan asserted product liability claims against several asbestos

manufacturers for personal injuries he suffered as a result of exposure to asbestos. 840 S.W.2d at 232. Mr. Hogan's wife was also a plaintiff and brought claims for loss of companionship, society, services, and consortium. *Id.* Mr. Hogan and his wife settled with several of the defendants prior to trial, and a jury subsequently found in favor of Mr. Hogan but against Ms. Hogan. *Id.* The trial court reduced Mr. Hogan's damages award by the amount of the pretrial settlements. *Id.* at 233. On appeal, Mr. Hogan claimed that the trial court erred in reducing his damages award by the entire amount of the pretrial settlements because some of the settlement monies should have been allocated to his wife's claim and that portion should not have been deducted from his damages award. *Id.* at 236. This Court disagreed, finding that it was "impossible to determine the intent of the parties as to the separate allocations [of the settlement amounts] for Mr. & Mrs. Hogan's claims." *Id.* at 237. Accordingly, we held that the trial court did not err in reducing Mr. Hogan's damages award by the entire settlement amount because the Hogans failed to differentiate in the settlement agreements which portion of the settlement was allocable to Mr. Hogan's claim and which portion to Ms. Hogan's claim. *Id.* at 238.

Contrary to Valley Oil's claims, *Hogan* actually provides further support for the trial court's decision that Valley Oil was not entitled to a reduction in the damages award. Differentiation of the settlement monies between the claimants in *Hogan* is analogous to differentiation of the damages award between claims in the case at bar. Valley Oil did not seek clarification of which portion of the damages award was applicable to the breach of contract claim and which portion was applicable to the tort claims. Thus, just as Mr. Hogan was not entitled to the benefit of a credit for his wife's claims in *Hogan*, Valley Oil was not entitled to the benefit of a reduction in the damages award for the tort claims.

Accordingly, for all of the foregoing reasons, the trial court did not err in refusing to reduce the award of damages against Valley Oil by the amount of the pre-trial settlements Ozark reached with the other defendants based on § 537.060.

Valley Oil argues, alternatively, that, even if § 537.060 does not apply, "Missouri policy and common law clearly abhor double recovery for the same injury and prohibit awarding [Ozark] a windfall in this case." In support of its argument, Valley Oil relies on *Ross v. Holton,* 640 S.W.2d 166 (Mo.App. E.D.1982), and *Kincaid Enterprises, Inc. v. Porter,* 812 S.W.2d 892 (Mo.App. W.D.1991).

■ This Court agrees with Valley Oil that, in general, "a party cannot be compensated for the same injury twice." *Ross,* 640 S.W.2d at 173. Nevertheless, neither *Ross* nor *Kincaid* are applicable in this case. For example, in *Ross,* the plaintiff sued one defendant for breach of contract and another defendant for tortious interference with a contractual relationship. 640 S.W.2d at 169. The jury returned a verdict against one defendant for breach of contract in the amount of $13,000. *Id.* The jury also returned a verdict against the other defendant for tortious interference with a contractual relationship in the amount of $10,890. *Id.* On appeal, the defendants claimed that the jury's verdict improperly compensated the plaintiff twice for the same injury. *Id.* at 172. This Court agreed with the defendants, finding that the plaintiff was not entitled to "collect double recovery (once from each defendant) for actual damages which are coextensive under the contract and tort claims." *Id.* at 173. On remand for retrial, this Court instructed the trial court to submit one damages instruction.

*Id.* The ruling in *Ross* is essentially the rule of merger, *i.e.,* two or more separate jury awards merge when the awards are for the same harm.[4] As noted above, in the case at bar, the trial court instructed the jury to award one damages award if it found in favor of Respondent on any of the submitted claims, and the jury followed the instructions and awarded one amount. Thus, contrary to Appellant's arguments, the rule of merger is simply not implicated.

■ In the case at bar, the jury found in favor of Ozark on tort claims that had been asserted against additional defendants *and* on its claim for breach of contract for failure to provide a properly functioning turn-key fuel farm that was asserted against Valley Oil alone. Although Ozark settled with the other defendants for $2,815,000, its fourth amended petition prayed for damages in excess of $6,000,000, and it presented evidence at trial of damages far in excess of that amount. While "[t]here is no legal dispute that [Ozark is] entitled to only one recovery," there is no evidence that Ozark "recovered by settlement any of the damages submitted on the breach of contract claims." *Stege v. Hoffman,* 822 S.W.2d 517, 519 (Mo.App. E.D.1991). The general rule is that a party "may not recover from all sources an amount in excess of the damages sustained, or be put in a better condition than he would have been had the wrong not been committed." *Russell v. Farmers & Merchants Ins. Co.,* 834 S.W.2d 209, 220 (Mo.App. S.D.1992) (internal quotation omitted); *see also Norber v. Marcotte,* 134 S.W.3d 651, 661 (Mo.App. E.D.2004) ("While a single transaction may invade more than one right, a plaintiff may not be made more than whole or receive more than one full recovery for the same harm."). Thus, in the case at bar, there is no basis other than speculation to say that the judgment allowed Ozark a double recovery.[5]

4. Likewise, in *Kincaid,* the plaintiff sued the defendant for breach of contract and fraud. 812 S.W.2d at 894. At trial, the plaintiff submitted both theories to the jury and the jury returned a verdict for the plaintiff in the amount of $35,000 for breach of contract and $36,000 for fraudulent representation. *Id.* The trial court entered judgment on the verdicts in the amount of $71,000. *Id.* On appeal, this Court held that "instructions that allow a jury to return damages that overlap or duplicate are error." *Id.* at 901. Thus, because this Court found that the proven damages for both the breach of contract and tort claim were the same, the verdicts merged. *Id.* at 900. Again, because the jury did not award two separate verdicts in the case *sub judice,* the rule of merger is inapplicable.

5. The crux of Valley Oil's arguments on this appeal is that because the jury found against it and in favor of Ozark on three counts, two sounding in tort and the other in contract, and awarded a single verdict of $3,000,000, that such is proof that the jury found the total amount of all damages sustained by Ozark caused by all defendants for all causes of action to be $3,000,000. Valley Oil's reasoning is flawed.

There were eleven total defendants listed in Ozark's fourth amended petition. Ozark indicated in the petition that it would refer to eight of them, including Valley Oil, collectively as "the fuel defendants." In addition to the other seven "fuel defendants," Ozark also settled separately with one company that was not included in the fourth amended petition for unidentified claims purportedly related to the fuel tanks. Ozark referred to the other three listed defendants, Northrup Grumman Space and Missions Systems Corp. f/k/a TRW, Inc. ("TRW"), Moog Controls, Ltd. ("Moog"), and Pratt & Whitney Canada Corp. ("Pratt"), collectively as "the engine defendants." These three defendants settled with Ozark collectively in one agreement. All of the counts asserted against TRW, Moog, and Pratt were based solely on the aircraft engines and motors in the fuel control system and were not asserted against any other defendants. Notably, one of the counts against the three "engine defendants" was for fraud.

The allegations against Valley Oil were posited in counts based on breach of contract

In conclusion, the trial court did not err in denying Valley Oil's request to reduce the damages award by the amount Ozark received in pretrial settlements with other defendants. The judgment is affirmed.

All concur.

(three counts, one of which was based on implied warranty), strict liability for product defect (one count that was submitted as two separate theories at trial), and negligence. At trial, Ozark also submitted an additional count based on negligent misrepresentation concerning re-certification of the fuel farm. These counts all pertained to the fuel farm and fuel supplied from that fuel farm, and there was no claim against Valley Oil for fraud. Similar counts for breach of contract, breach of warranty, strict liability, and negligence were asserted against the other "fuel defendants," except for the breach of contract claim that was asserted against Valley Oil only for failure to provide a properly operating turn-key fuel farm. Ozark prayed for damages of $6,000,000 in each count of its fourth amended petition.

From the foregoing, it is apparent that the jury's damages award to Ozark did not necessarily represent all damages sustained by Ozark and that at least some of the settlements covered damages for causes of action not even pled against Valley Oil. Accordingly, Valley Oil's assertion that anything Ozark might receive in excess of $3,000,000 is a double recovery is, quite simply, incorrect.